**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WOUL SOO PARK,<br>*Plaintiff-Appellant*, | No. 18-55914 |
| v. | D.C. No.<br>2:16-cv-09329-<br>SJO-FFM |
| WILLIAM P. BARR, Attorney General; CHAD F. WOLF; KEN CUCCINELLI ; SUSAN M. CURDA; CORINNA LUNA,<br>*Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted November 5, 2019
Pasadena, California

Filed January 7, 2019

Before: Jerome Farris, M. Margaret McKeown, and
Barrington D. Parker, Jr.,* Circuit Judges.

Per Curiam Opinion

---

* The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

# SUMMARY[**]

### Immigration

The panel reversed the district court's denial of Woul Park's petition challenging a decision by the United States Citizenship and Immigration Services ("USCIS") denying her application for naturalization, and remanded, holding that: a B-2 nonimmigrant whose lawful status has lapsed is precluded from establishing lawful domicile in California by operation of federal law; and, therefore, Park's divorce and subsequent marriage to a U.S. citizen were valid under California law, she was properly admitted for permanent residency, and is entitled to naturalization.

Park, a Korean citizen, married Byung Gug Choi in Korea, and later came to the United States on a B-2 tourist visa in 2003. She overstayed her visa and has resided in California ever since. Park and Choi obtained a valid divorce under Korean law, and Park later married James Yong Park, a U.S. citizen, in California and received lawful permanent residency based on that marriage.

USCIS then denied Park's application for naturalization. USCIS found that Park and Choi were California domiciliaries when their Korean divorce decree was executed and, as a result, the divorce could not be recognized under California law. Having determined that Park's divorce was invalid, USCIS concluded that her marriage to James Yong Park was similarly invalid, and therefore, Park was never

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

lawfully admitted for permanent residency. Accordingly, USCIS denied Park's application for naturalization because she could not satisfy the requirement of having been lawfully admitted for permanent residency. The district court granted summary judgment in favor of the Government.

The panel observed that the case turned on whether Park was "domiciled" in California and that the validity of Park's marriage to James Yong Park was governed by California law. The panel explained that, under California law, domicile is established by physical presence and an intention to remain indefinitely. However, the panel further explained that federal immigration laws impose outer limits on a state's freedom to define it. Here, the B-2 tourist visa classification requires nonimmigrants to maintain a residence in their country of citizenship with no intention of abandoning it. It follows, the panel explained, that Congress has not permitted B-2 nonimmigrants to lawfully form a subjective intent to remain in the United States; such an intent would inescapably conflict with Congress's definition of the nonimmigrant classification. Therefore, the panel held that Park, as a nonimmigrant who entered the United States and unlawfully overstayed her visa, was precluded from establishing domiciliary intent to remain in the United States. As a result, her divorce and subsequent marriage were valid, she had been lawfully admitted for permanent residence, and was thus entitled to naturalization.

Rejecting the government's contention that those who violate the conditions of their visa are no longer subject to the statutes that preclude them from establishing a lawful subjective intent to remain, the panel explained that it would be inconsistent to conclude that Congress sought to preclude nonimmigrants who comply with federal immigration law

from the benefits that flow from state domiciliary status while permitting nonimmigrants who violate their visa conditions to share in them.

The panel also addressed *In re Marriage of Dick*, 15 Cal. App. 4th 144 (Ct. App. 1993), in which the California Court of Appeal held that nonimmigrant status does not preclude a finding of residence under California law for purposes of obtaining a dissolution of marriage. The panel declined to read *Dick* as applicable to this case, explaining that the California Court of Appeal in *Dick* interpreted the word "residence" rather than "domicile," that the cases turned on different state codes, and that USCIS and the district court erred in interpreting "domicile" in line with the interpretation of "residence" in *Dick* given the conflict with federal law that would result from such an interpretation.

---

## COUNSEL

Shirley Wei (argued), Law Office of Shirley Wei, Los Angeles, California, for Plaintiff-Appellant.

Sergio Sarkany (argued), Counsel for National Security; Kathleen A. Connolly, Senior Counsel for National Security; William C. Peachey, Director, District Court Section; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

PER CURIAM:

Woul Park appeals from the district court's denial of her petition challenging a decision by the United States Citizenship and Immigration Services ("USCIS") denying her application for naturalization. We review the district court's summary judgment order de novo. *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012). We reverse.

## I.

Woul Park, a Korean citizen, married Byung Gug Choi in Korea in 1988. Park came to the United States on a B-2 tourist visa in 2003. Park overstayed her visa and has resided in California ever since. Park and Choi jointly filed a Request for Divorce at the Korean Consulate in California, and the divorce became valid and final under Korean law as of May 12, 2009. Following the divorce, Park married James Yong Park, a United States citizen, in California. Park applied for and received lawful permanent residency based on this putative marriage. Park then applied for naturalization in 2014.

USCIS denied Park's application for naturalization because it determined that Park's divorce from Choi was invalid under California law, thus invalidating her marriage to James Yong Park. USCIS found that both Park and Choi were California domiciliaries when their Korean divorce decree was executed. The agency then concluded that Park's purported 2009 divorce would not have been recognized under California law because California Family Code § 2091 bars the state from recognizing a foreign divorce when both

parties are California domiciliaries. This finding set off a cascade of legal consequences. If Park's divorce from Choi was invalid under California law, then Park's marriage to James Yong Park was similarly invalid. Park's application for permanent residence was dependent on her lawful marriage to a United States citizen. *See* 8 U.S.C. § 1154(a)(1)(A)(i); *Hammad v. Holder*, 603 F.3d 536, 537–38 (9th Cir. 2010). Since Park's marriage was invalid at its inception, USCIS reasoned, Park could never have been lawfully admitted for permanent residency. *See Matter of Hosseinian*, 19 I. & N. Dec. 453, 454 (BIA 1987). And finally, since Park had to show that she had been lawfully admitted as a permanent resident in order to naturalize, *see* 8 U.S.C. § 1427(a)(1), USCIS denied her application for naturalization.

The district court reviewed Park's application de novo. *See* 8 U.S.C. § 1421(c). The district court adopted USCIS's reasoning and granted summary judgment in favor of the Government. The court recognized that California's interpretation of "domicile" in the family law context appeared to conflict with other state and federal precedents that precluded certain nonimmigrants from establishing the subjective intent to remain in a United States jurisdiction necessary to lawfully establish "domicile." *Compare In re Marriage of Dick*, 15 Cal. App. 4th 144, 154 (Ct. App. 1993) (holding that "nonimmigrant status does not preclude a finding of residence under California law for purposes of obtaining a dissolution of marriage") *with Toll v. Moreno*, 458 U.S. 1, 14 (1982) (explaining that "Congress has precluded [certain nonimmigrants who are required to maintain permanent foreign domiciles] from establishing domicile in the United States"). Regardless, the district court determined that it was bound by *Marriage of Dick* as the

controlling California precedent, ordered summary judgment in favor of the Government, and dismissed Park's action.

We reverse and hold that Park, as a B-2 nonimmigrant whose lawful status had lapsed, was precluded from establishing lawful domicile in California by operation of federal law. Her divorce and subsequent marriage were therefore valid under California law, she was properly admitted for permanent residency based on her marriage to a United States citizen, and she is entitled to naturalization.

## II.

This case turns on whether Park was "domiciled" in California at the time of her divorce. The law of the state in which the marriage was celebrated governs the validity of a marriage in the immigration context. *Hosseinian*, 19 I. & N. Dec. at 455; *see also United States v. Sacco*, 428 F.2d 264, 268 (9th Cir. 1970). Park's marriage to James Yong Park, which was celebrated in California, is thus governed by California law. California has adopted the Uniform Divorce Recognition Act, which was drafted in 1948 by the Commissioners on Uniform State Laws in order "to discourage the so-called migratory divorce." Donald F. Powell, *Foreign Divorce Recognition in California*, 16 Hastings L.J. 121, 123 (1964). Under California law, a divorce obtained in a foreign jurisdiction is invalid if "both parties to the marriage were domiciled in [California] at the time the proceeding for the divorce was commenced." Cal. Fam. Code § 2091. USCIS and the district court found that Park and Choi were both California domiciliaries at the time they obtained their Korean divorce, meaning that their divorce was of "no force or effect" in California. *Id.*

Under California law, domicile is established by "(1) physical presence . . . with (2) an intention to remain there indefinitely." *In re Marriage of Tucker*, 226 Cal. App. 3d 1249, 1258–59 (Ct. App. 1991) (citations and quotations omitted); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (calling domicile a "widely used" concept with a "generally uncontroverted" meaning). Domicile is primarily a creature of state law, but federal immigration laws impose outer limits on a state's freedom to define it. *See, e.g.*, *Toll*, 458 U.S. at 10–11. In *Toll*, the Supreme Court held that the Supremacy Clause precluded states from imposing burdens on state domiciliaries lawfully present in the United States on G-4 nonimmigrant visas. *Id.* at 17. Where Congress specifically "permitted [the G-4 nonimmigrants] to establish domicile" through the text of the INA, a state university lacked authority to "impose discriminatory tuition charges and fees solely on account of [their] federal immigration classification." *Id.*

Here, Congress has done essentially the opposite. The B-2 tourist visa classification requires nonimmigrants to maintain a residence in their country of citizenship with no intention of abandoning it. 8 U.S.C. § 1101(a)(15)(B). It follows that Congress has *not* permitted B-2 nonimmigrants to lawfully form a subjective intent to remain in the United States; such an intent would inescapably conflict with Congress's definition of the nonimmigrant classification. The Supreme Court has recognized as much. *See Elkins v. Moreno*, 435 U.S. 647, 665 (1978) (noting that nonimmigrants cannot establish domicile where "Congress expressly conditioned admission . . . on an intent not to abandon a foreign residence," and specifically citing § 1101(a)(15)(B)); *Toll*, 458 U.S. at 14 & n.20 (citing the nonimmigrant classification described at § 1101(a)(15)(B) as

one in which "Congress has precluded the covered alien from establishing domicile in the United States"). Nonimmigrants on tourist visas are thus "precluded . . . from establishing domicile in the United States." *Von Kennel Gaudin v. Remis*, 379 F.3d 631, 637 (9th Cir. 2004) (quoting *Toll*, 458 U.S. at 14 & n.20).

The Government seeks to distinguish these cases by arguing that they have nothing to say about whether visa overstays, or persons outside of any lawful status, are similarly precluded from establishing domicile. Those who violate the conditions of their visa, the Government argues, are no longer subject to the statutes that preclude them from establishing a lawful subjective intent to remain in the country. Our court has already rejected that interpretation. *See Carlson v. Reed*, 249 F.3d 876, 880–81 (9th Cir. 2001) (explaining that a nonimmigrant precluded from establishing residency could not gain California residency by violating visa conditions because then her very presence in the country would be illegal); *see also Von Kennel Gaudin*, 379 F.3d at 638 (quoting *Graham v. INS*, 998 F.2d 194, 196 (3d Cir. 1993)). It would be inconsistent to conclude that Congress sought to preclude nonimmigrants who *comply* with federal immigration law from the benefits that flow from state domiciliary status while permitting nonimmigrants who *violate* their visa conditions to share in them. By restricting the domiciliary intent of B-2 nonimmigrants, Congress did not merely seek to restrict them from establishing a domicile for a temporary period, after which they could establish domicile simply by violating the terms of their entry and staying in the country unlawfully. Rather, "Congress must have meant aliens to be barred from these classes if their real purpose in coming to the United States was to immigrate permanently." *Elkins*, 435 U.S. at 665. The Supreme Court

found it similarly "clear that Congress intended that, in the absence of an adjustment of status . . . , nonimmigrants in restricted classes who sought to establish domicile would be deported." *Id.* at 666. We hold that Park, as a nonimmigrant who entered the United States pursuant to 8 U.S.C. § 1101(a)(15)(B) and unlawfully overstayed her visa—like those in lawful B-2 status, *see Von Kennel Gaudin*, 379 F.3d at 637—was precluded from establishing domiciliary intent to remain in the United States.

In the face of this federal precedent, USCIS and the district court still felt bound by California statutory and decisional law that would seem to demand a contrary result. The California Court of Appeal, seemingly in contrast to these federal decisions, has held that "nonimmigrant status does not preclude a finding of residence under California law for the purposes of obtaining a dissolution of marriage." *In re Marriage of Dick*, 15 Cal. App. 4th at 154 (reasoning that a nonimmigrant on a renewable visa "may have the dual intention of remaining in this country indefinitely by whatever means including renewal of a visa and of returning to his or her home country if so compelled"). In *Dick*, the California Court of Appeal exercised jurisdiction over a tourist visa holder in a dissolution proceeding, notwithstanding a statute requiring the husband to have been a California "resident" for six months preceding the divorce. *Id.* at 156–157.

We generally "follow decisions of the California Court of Appeal unless there is convincing evidence that the California Supreme Court would hold otherwise," *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010), but we decline to read *Dick* as applicable to the new circumstance addressed in this case. In *Dick*, the California Court of

Appeal interpreted the word "residence" rather than "domicile," and the case turned on Cal. Civ. Code § 4530(a) (1992)[1] rather than Cal. Fam. Code § 2091.  15 Cal. App. 4th at 152–53.  We recognize that the Court of Appeal expressly conflated "residence" with "domicile."  *Id.* at 153 ("[R]esidency is synonymous with domicile, the latter term meaning 'both the *act* of residence and an *intention* to remain. . . .") (emphasis in original) (citation and quotation omitted).  Regardless, USCIS and the district court erred in interpreting "domicile" in § 2091 in line with the California Court of Appeal's interpretation of "residence" in *Dick* given the conflict with federal law that would result from such an interpretation.  In addition to the federal precedents relied upon above, the California Supreme Court has also recognized the clear import of *Elkins*, *Toll*, and their progeny.  *See Martinez v. Regents of Univ. of Calif.*, 50 Cal. 4th 1277, 1290 (2010) (citing *Regents of Univ. of Calif. v. Sup. Ct.*, 225 Cal. App. 3d 972, 979 (Ct. App. 1990)) (explaining that undocumented immigrants cannot establish domicile in order to qualify for in-state tuition).

In our view, and under the circumstances here, we read the holding of *Marriage of Dick* narrowly so as to accommodate the "preeminent role of the Federal Government with respect to the regulation of aliens within our borders."  *Toll*, 458 U.S. at 10.  Under federal law, Park was precluded from establishing domiciliary intent by virtue of her status as an out-of-status nonimmigrant initially present in the United States on a tourist visa.

---

[1] This statutory provision now appears at Cal. Fam. Code § 2320.

12                              PARK V. BARR

We **REVERSE** the order of the district court, and **REMAND** for further proceedings consistent with this opinion.